## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JEROME EVANS, | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-22-0746 |
| AMERICAN COLLECTION ENTERPRISE, *et al.* | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM

On March 28, 2022, Plaintiff Jerome Evans filed a Complaint against Defendants American Collection Enterprise ("ACE"), Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), and Trans Union, LLC ("Trans Union"), alleging three violations of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681, *et seq.*[1] (*See* Compl., ECF No. 1.) Experian and ACE are the only Defendants remaining in this case, as Evans reached a settlement agreement with Equifax (ECF No. 16) and with Trans Union (ECF No. 25), and both Defendants were dismissed from this case with prejudice. (ECF Nos. 17, 26, 29, 30.) On May 23, 2022, ACE filed a Motion to Dismiss. (ACE Mot. Dismiss, ECF No. 14.) Rather than filing a response in opposition to ACE's Motion, on June 22, 2022, Evans sought leave to file a First Amended Complaint. (*See* Mot. Leave First Am. Compl., ECF No. 23; Proposed Amended Complaint ("PAC"), ECF No. 23-1.) Both Motions are ripe for consideration and no hearing is required. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, the Court will grant

---

[1] While the Complaint states that Evans brings this action under both the FCRA and the Fair Debt Collection Practices Act (the "FDCPA"), (Compl. ¶ 1), the specific Counts alleged therein only allege violations of the FCRA. (*See id.* ¶¶ 27–31 (15 U.S.C. § 1681e(b)), 32–36 (15 U.S.C. § 1681i(a)), 37–41 (15 U.S.C. § 1681s-2(b)).)

Evans's Motion for Leave to Amend (ECF No. 23), deny ACE's Motion to Dismiss (ECF No. 14) as moot, dismiss Experian *sua sponte* for lack of subject matter jurisdiction, and strike Trans Union from the Amended Complaint.

## I.    *Background*[2]

Experian, Equifax, and Trans Union are credit reporting agencies within the meaning of the FCRA (collectively, the "CRA Defendants"). (Compl. ¶ 4.) ACE is a debt collections agency. (*Id.* ¶ 3.) The CRA Defendants "are reporting two collections that contain errors[]" reported by ACE and another debt collector, Transworld Systems, Inc. ("TSI"). (*Id.* ¶¶ 5–6.) First, "ACE is reporting or reported three medical collections for University of Maryland Faculty Physicians in the amount[s] of $38, $183[,] and $230."[3] (*Id.* ¶ 7.) Second, "TSI is reporting a medical collection for Emergency Medical Billing Services LLC [("EBS")] in the amount of $1,187." (*Id.* ¶ 8.) However, all of these collections were covered by Evans's insurance. (*Id.* ¶¶ 9 (emphasis in original) ("Mr. Evans does not owe anything to the University of Maryland Faculty Physicians. His medical bills were covered and *paid* by insurance."), 13 ("[Mr. Evans] was charged $1,187 for services he received. But Mr. Evans has insurance that covered his medical bills and EBS has acknowledged the balance is $0.00.").)

After Evans disputed these collections with the CRA Defendants (Compl. ¶ 14),[4] Experian notified him "that the TSI collection was verified as accurate, but the three collections reported by ACE were being removed from his report." (*Id.* ¶ 16.) It did so because Experian knew that "ACE

---

[2] At the motion to dismiss stage, the "well-pled allegations of the complaint" are accepted as true and "the facts and reasonable inferences derived therefrom" are construed "in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997) (citing *Little v. Fed. Bureau of Inv.*, 1 F.3d 255, 256 (4th Cir. 1993)).

[3] Further, Evans alleges that "ACE is reporting the wrong date of service or reporting a service that was not rendered[]" and that "ACE never notified Mr. Evans of his rights to dispute the debt." (Compl. ¶¶ 10–11.)

[4] Equifax informed Evans "that it verified the TSI collection and the ACE collection in the amount of $38, but the other two ACE collections were deleted." (*Id.* ¶ 17.) Trans Union "did not send Mr. Evans any dispute results." (*Id.* ¶ 18.)

reports inaccurate information" and has a "bad reputation for reporting inaccurate information." (*Id.* ¶ 22.) Following Evans's dispute, ACE instructed the CRA Defendants to continue reporting these collections in an effort to use the credit reporting function "as a collection tactic[,]" which it uses "to pressure consumers to pay debt they do not owe." (*Id.* ¶¶ 24–25.) TSI also "reports inaccurate information on a regular basis" and the CRA Defendants know that TSI "is not a reliable source of information." (*Id.* ¶ 26.)

Evans again disputed these collections with the CRA Defendants, this time including the date of the TSI debt's resolution and phone number for EBS, who Evans warranted could verify that he did not owe the TSI debt, and stating that the ACE collections had been paid. (Compl. ¶ 29, 35.) The CRA Defendants sent the dispute to TSI, who instructed them to continue reporting the balance. (*Id.* ¶¶ 31–32.) They did not call EBS or Evans; nor did they request that TSI verify the reported balance. (*Id.* ¶¶ 33–34, 36.) Neither the CRA Defendants nor ACE verified the ACE collections or reported them as disputed. (*Id.* ¶¶ 35–39.)

Following these events, Evans filed a Complaint in this Court alleging three violations of the FCRA. (*See generally* Compl.) First, Evans alleges that the CRA Defendants prepared inaccurate credit reports about him due to their willful failure to implement reasonable procedures to ensure maximum possible accuracy in violation of 15 U.S.C. § 1681e(b). (*Id.* ¶¶ 27–31.)[5] Second, Evans alleges that the CRA Defendants willfully failed to investigate his disputes and, in some instances, did not forward the disputes to the furnishers of the debt information—all in violation of 15 U.S.C. § 1681i(a). (*Id.* ¶¶ 32–36.) Third, Evans alleges that ACE willfully failed to properly investigate his disputes or correct its reporting based on them in violation of 15 U.S.C.

---

[5] Due to an apparent error in numbering, paragraphs 27 through 39 appear twice in the Complaint. (*See* Compl. at 5 (re-starting the numbering at ¶ 27 immediately after ¶ 39).) This error is corrected in the Proposed Amended Complaint ("PAC"). (*See* PAC at 5–7.)

§ 1681s-2(b). (*Id.* ¶¶ 37–41.) Evans seeks punitive and "statutory or actual damages," totaling at least $100,000 in damages for each violation. (*Id.* ¶¶ 30–31, 35–36, 40–41.)

The Proposed Amended Complaint ("PAC") removes Equifax as a defendant,[6] reiterates the above allegations, and details additional consequences Evans suffered as a result. (*See generally* PAC.) Evans further alleges that the CRA Defendants' reporting of the ACE and TSI collections caused his "credit score to drop substantially"; that he "refrained from seeking any credit because of the negative effect on his credit profile"; and that he "was frustrated with the credit dispute process and became depressed [and] felt helpless in his attempts to correct" these errors. (PAC ¶¶ 40–42.) As a result of all three alleged FCRA violations, Evans avers that he suffered actual damages in the form of "economic damages and emotional distress." (PAC ¶¶ 46, 52, 58.)

## II.    *Legal Standards*

### A.  *Motion to Amend*

Under Federal Rule of Civil Procedure 15(a)(1),

> [a] party may amend its pleading once as a matter of course within [ ] 21 days of serving it, or [ ] if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave should be given "freely" and "when justice so requires." *Id.* A court "may deny leave to amend for reasons 'such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure

---

[6] A settlement was not reached with Trans Union until after Evans filed his Motion for Leave to File a First Amended Complaint. (*Compare* Mot. Leave First Am. Compl. (filed June 22, 2022), *with* Trans Union Settlement Notice, ECF No. 25 (filed June 30, 2022).) Because Trans Union has already been dismissed from this case, the Court will strike it from the Amended Complaint.

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.'" *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 480 (4th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Daulatzai v. Maryland*, --- F. Supp. 3d ---, Civ. No. JKB-21-0590, 2022 WL 2078284, at *4 (D. Md. June 9, 2022) (same).

### B. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss a claim on the argument that the presiding court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Motions to dismiss for lack of subject matter jurisdiction are properly granted where a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)). "Rule 12(b)(1) governs motions to dismiss . . . for lack of standing, which pertain to subject matter jurisdiction." *Stone v. Trump*, 400 F. Supp. 3d 317, 333 (D. Md. 2019); *see also Roy v. Ward Mfg., LLC*, Civ. No. RDB-13-3878, 2014 WL 4215614, at *1 (D. Md. Aug. 22, 2014) ("When a defendant moves to dismiss a plaintiff's claim for lack of standing, courts commonly address the motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure."). When considering a motion to dismiss challenging a plaintiff's standing to bring suit in federal court, "the court determines whether the allegations in the Complaint, taken as true, are sufficient to establish standing under the plausibility standard of Rule 12(b)(6) and *Iqbal/Twombly*." *Allah-Mensah v. Law Office of Patrick M. Connelly, P.C.*, Civ. No. PX-16-1053, 2016 WL 6803775, at *2 (D. Md. Nov. 17, 2016) (citing *Zander v. United States*, 786 F. Supp. 2d 880, 883 (D. Md. 2011)).

### III.    Analysis

ACE has moved to dismiss the Complaint (ECF No. 14), arguing that Evans lacks Article III standing, and Evans has sought leave to file a first amended complaint (ECF No. 23). ACE opposes Evans's Motion for Leave to Amend (ECF No. 27), and Evans did not file a reply in support of his Motion. Because disposition of Evans's Motion for Leave to Amend will moot ACE's Motion to Dismiss, the Court will first resolve Evans's Motion.

### A. Motion for Leave to Amend

In his Motion for Leave to Amend, Evans argues that the Court should permit him to file an amended complaint because the PAC further alleges that ACE's reporting of the disputed medical debts lowered his credit score, that he "refrained from applying for credit as a result[,]" and that he suffered emotional distress. (Mot. Leave First Am. Compl. ¶¶ 13–14.) ACE opposes Evans's Motion, arguing that allowing him to file the amended complaint would be futile because the PAC does not establish that Evans has standing to sue in federal court.[7] (*See generally* ECF No. 27.)

"[D]istrict courts are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny." *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) (citing *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011)). While a challenge to a plaintiff's standing is properly considered under Rule 12(b)(1), it follows that a district court may also deny leave to amend as futile where the proposed amended complaint fails for lack of standing. *See Laufer v. Naranda Hotels, LLC*, Civ. No. SAG-20-1974, 2020 WL 7384726, at *3 (D. Md. Dec. 16, 2020) ("Where a plaintiff lacks Article III standing, it is axiomatic that any proposed amendment that fails to remedy the standing issue is futile."); *see also South Carolina*

---

[7] ACE does not argue, and the Court finds no basis for concluding, that undue delay, bad faith, dilatory motive, repeated failure to cure, or undue prejudice support denial of Evans's Motion. *See Glaser*, 464 F.3d at 480.

*Coastal Conservation League v. U.S. Army Corps of Engineers*, 789 F.3d 475, 484 (4th Cir. 2015) (affirming denial of motion for leave to file a first amended complaint because the underlying complaint was moot and plaintiff "offered no additional basis for standing with respect to the claim it sought to add"). Although ACE's arguments appear to only challenge whether the PAC asserts a cognizable injury against ACE, they apply with equal force with respect to whether it does so against Experian. The Court will first consider Evans's standing to sue Experian before considering his standing to sue ACE based on the allegations contained in the PAC.

### 1. Standing

Federal judicial power is confined to the resolution of "Cases" and "Controversies[.]" U.S. Const. art. III, § 2, cl. 1. One consequence of this restriction is that a plaintiff seeking relief in federal court must demonstrate that he or she has standing to sue. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). To do so, it is the plaintiff's burden to show that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan*, 504 U.S. at 560–61; *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). "[T]he injury-in-fact requirement requires a plaintiff to allege an injury that is both 'concrete *and* particularized.'" *Spokeo*, 578 U.S. at 334 (citing *Laidlaw*, 528 U.S. at 180–81) (emphasis in original).

To determine whether the concrete injury requirement is satisfied, courts look to both "historic practice and the judgment of Congress." *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 653 (4th Cir. 2019). First, "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in

American courts." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). "Courts must [also] afford due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation." *Id.* (citing *Spokeo*, 578 U.S. at 340–41).

### 2. *Experian*[8]

Like the Complaint, the PAC alleges that, along with the other CRA Defendants, Experian (1) prepared inaccurate reports about Evans due to its failure to use reasonable procedures to ensure maximum possible accuracy of its reporting, in violation of 15 U.S.C. § 1681e(b); and (2) failed to investigate Evans's dispute, in violation of 15 U.S.C. § 1681i(a). (PAC ¶¶ 43–54.) Evans avers that the CRA Defendants' reporting of the ACE and TSI collections caused his "credit score to drop substantially." (PAC ¶ 40.) Before the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), "a decrease in credit score [could] establish an injury in fact sufficient to confer standing[]" when plausible. *Green v. RentGrow, Inc.*, Civ. No. 16-0421, 2016 WL 7018564, at *8 (E.D. Va. Nov. 10, 2016) (citing *Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691, 698 (N.D. Ill. 2016)).

After *TransUnion*, however, Evans must show that his allegedly artificially deflated credit score was disseminated to a third party. *See Zlotnick v. Equifax Inf. Servs.*, --- F. Supp. 3d ---, Civ. No. 21-7089, 2022 WL 351996, at *2 (E.D.N.Y. Feb. 3, 2022) (rejecting proposition that lowered credit score alone can constitute cognizable injury where plaintiff failed "to allege any particularized injury or actual dissemination to third-party creditors"). In *TransUnion*, the

---

[8] Experian filed an answer to the Complaint and filed no opposition to Evans's Motion for Leave to File a First Amended Complaint. (*See* Experian Ans., ECF No. 22 (filed June 6, 2022)). Despite this, the Court will evaluate Evans's standing to sue Experian because of its duty to "ensure that it has subject matter jurisdiction[.]" *Goldman v. Brink*, Civ. No. 21-0420, 2022 WL 2024745, at *5 n.8 (E.D. Va. June 6, 2022) (concluding that a district court "may address standing *sua sponte*"); *see Buscemi v. Bell*, 964 F.3d 252, 258 (4th Cir. 2020) ("[W]e must assure ourselves of subject matter jurisdiction and may address standing sua sponte[.]").

Supreme Court found that, of the 8,185 class members challenging certain TransUnion reporting procedures under the FCRA, only the 1,853 class members "whose credit reports were disseminated to third-party businesses during the class period suffered a concrete harm," while the 6,332 class members whose reports were not provide to third-party businesses did not. *TransUnion*, 141 S. Ct. at 2212–13. Those 1,853 class members had standing because their injury bore a "close relationship" to "the reputational harm associated with the tort of defamation." *Id.* at 2208 (citing *Spokeo*, 578 U.S. at 341).

Here, the Court concludes that, like that suffered by the *TransUnion* class members, Evans's injury most closely resembles the tort of defamation. Absent another workable historical analogue, *TransUnion*'s requirement that the allegedly inaccurate information be disseminated to a third party applies. Although alleged dissemination to a third party is enough to constitute a concrete injury, *see TransUnion*, 141 S. Ct. at 2209, this can also be shown by pleading facts demonstrating other real-world consequences of the underlying FCRA violation. *See, e.g., Leslie v. Experian Inf. Sols., Inc.*, Civ. No. 21-0334, 2022 WL 3106700, at *3 (D. Haw. Aug. 4, 2022) (standing found where complaint alleged that defendant's "inaccurate reporting of [an] account was at least a partial cause of [p]laintiff's being 'extend[ed] less favorable credit terms' by financial institutions and being 'denied a Discover [credit] card[]'"); *Merchant v. Equifax Inf. Servs., LLC*, --- F. Supp. 3d ---, Civ. No. 20-11136, 2022 WL 2806624, at *2 (D. Mass. July 18, 2022) (standing found at the summary judgment stage where plaintiff "produced an affidavit from the broker with whom he was working to refinance his home mortgage, indicating that [he] was unable to obtain refinancing for months due to the purported freeze on his Equifax account"). However, Evans has not alleged that Experian disclosed his lowered credit score, or the medical debts themselves, to another entity.

9

Neither does Evans's decision to abstain from seeking credit support standing after *TransUnion*. Evans cites a case from this District—which was decided before *TransUnion*—in support of the proposition that deterrence from accessing the credit market can support standing. *See Long v. Pendrick Cap. Partners II, LLC*, 374 F. Supp. 3d 515, 529 (D. Md. 2019) ("[A] plaintiff may be compensated if she is merely deterred from accessing the credit market because of inaccuracies in her report."). *Long*, however, is distinguishable on several grounds. First, the *Long* court was not tasked with evaluating whether the plaintiff had standing; rather, that court evaluated whether the defendant was entitled to summary judgment on the grounds that the plaintiff had failed to establish "actual damages"—a requirement to succeed on a claim of a negligent violation of the FCRA under 15 U.S.C. § 1681o. *Long*, 374 F. Supp. 3d at 529. Second, unlike Evans's conclusory allegation that he was deterred from seeking credit, (*see* PAC ¶ 41), the *Long* plaintiff fleshed out the specific consequences she faced as a result of the inaccuracies contained in her credit report, including "deterr[ence] from pursuing new career opportunities because she knew that her credit report included inaccurate information and she works in an industry that requires a high level of financial trust;" and "after a prospective employer required access to [her] credit report and subsequently did not offer [her] a job, [the p]laintiff postponed applying for additional new jobs." *Id.* at 529–30. Finally, "*TransUnion* rejected the proposition that mere risk of future harm—without more—can support standing in a suit for damages." *Pruitt v. Resurgent Cap. Servs., LP*, --- F. Supp. 3d ---, Civ. No. JKB-21-2615, 2022 WL 2530408, at *4 n.5 (D. Md. July 7, 2022) (citing *TransUnion*, 141 S. Ct. at 2210–12; *Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357, 361 (6th Cir. 2021)). To succeed on this theory, Evans must have shown that the risk of future harm—i.e., that he was disadvantaged in the credit market— "materialized, or that [he was] independently harmed by [his] exposure to the risk itself." *Ward*,

9 F.4th 357, 361 (citing *TransUnion*, 141 S. Ct. at 2211) (internal quotation marks omitted). He has done neither here.

Because Evans does not allege that Experian disseminated either his lowered credit score or the medical debt information to a third party, and because it is unclear what pursuits he was prevented from seeking in the credit market as a result of his lowered credit score, his remaining allegations describing frustration with the dispute process and resulting depression, emotional distress, and economic damages are either insufficient or too conclusory to constitute a concrete injury. *See TransUnion*, 141 S. Ct. at 2211 n.7 (declining to take a "position on whether or how . . . an emotional or psychological harm [resulting from risk of future harm] could suffice for Article III purposes—for example, by analogy to the tort of intentional infliction of emotional distress"); *cf. Beck v. McDonald*, 848 F.3d 262, 272 (4th Cir. 2017) (rejecting plaintiffs' argument that "emotional upset" and "fear of identity theft and financial fraud" were "sufficient to confer Article III" standing to pursue Privacy Act claim); *Dreher v. Experian Inf. Sols., Inc.,* 856 F.3d 337, 346 (4th Cir. 2017) ("To be sure, it would be an end-run around the qualifications for constitutional standing if any nebulous frustration resulting from a statutory violation would suffice as an informational injury."). Emotional injury must be plausible, *Pruitt*, 2022 WL 2530408, at *6 n.9, and Evans has provided insufficient detail to allow the Court to evaluate whether the circumstances giving rise to his alleged emotional harm and economic damages are plausible. *Compare Ben-Davies v. Blibaum & Assocs., P.A.*, 695 F. App'x 674, 676 (4th Cir. 2017) (standing found where complaint alleged that defendant "demand[ed] payment of an incorrect sum based on the calculation of an interest rate not authorized by law" in violation of 15 U.S.C. § 1692e(2)(A) and plaintiff consequently "suffered and continues to suffer" from "emotional distress, anger, and frustration"), *with Pruitt*, 2022 WL 2530408, at *6 (no standing where plaintiff's conclusory

allegations that she could not "evaluate her options" about a debt and that she "wasted time" provided insufficient detail).

Credit scores undoubtedly play a crucial role in establishing a consumer's power to participate in today's economy. But absent allegations that the score was disseminated to a third party, or specific allegations describing how the score detrimentally affected his ability to participate in the marketplace, an artificially reduced credit score alone does not constitute a concrete injury after *TransUnion*. Evans—through the PAC—has therefore failed to carry his burden to establish his standing to sue Experian. *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017) ("To invoke federal jurisdiction, a plaintiff bears the burden of establishing the three 'irreducible minimum requirements' of Article III standing[.]").

### 3. ACE

Both the Complaint and the PAC bring one claim against ACE under 15 U.S.C. § 1681s-2(b), arguing that ACE failed to conduct a proper investigation and correct its erroneous reporting. (PAC ¶ 56); *see also Woodward v. GEICO Advantage Ins. Co.*, Civ. No. GLR-21-0952, 2022 WL 2953053, at *4 (D. Md. July 25, 2022) (acknowledging that "§ 1681s-2(b) . . . creates a private right of action"). ACE argues, both in its Motion to Dismiss the Complaint and in its Opposition to Evans's Motion for Leave to File an Amended Complaint (ECF Nos. 14-1, 27), that Evans lacks standing to pursue this claim against it. ACE contends that the PAC's conclusory allegations of "economic damages and emotional damages" are insufficient to support standing and that the other relevant allegations—"namely, a drop in credit score, refraining from seeking credit, and depression"—are alleged to have resulted from the actions of the CRA Defendants, not ACE. (ECF No. 27 at 2.)

The Court concludes that, via the PAC, Evans has alleged facts sufficient to establish standing to bring his claim against ACE at the motion to dismiss stage. Though inartfully pled, the import of the sum total of Evans's allegations lead the Court to conclude that ACE reported three disputed medical debts to the CRA Defendants. (*See, e.g.*, PAC ¶¶ 7 ("ACE is reporting or reported three medical collections for University of Maryland Faculty Physicians in the amount of $38, $183, and $230."), 14 ("Mr. Evans disputed the TSI and ACE collections with the CRAs."), 16 ("[Experian's] dispute results notified Mr. Evans that the TSI collection was verified as accurate, but the three collections reported by ACE were being removed from his report.").) As previously discussed, under *TransUnion*, dissemination of allegedly defamatory information to a third party is sufficient to cause a concrete injury. *See TransUnion*, 141 S. Ct. at 2209; *Fernandez v. RentGrow*, 341 F.R.D. 174, 190 (D. Md. 2022). This includes disclosure by a debt collector to credit reporting agencies. *See Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146, 1153 (7th Cir. 2022).[9] Evans therefore suffered a concrete injury—the dissemination of three allegedly false medical collections—when ACE reported the collections to the CRA Defendants. Because Evans has standing to pursue his FCRA claim against ACE, the PAC does not fail for futility. Though the Court observes that both the Complaint and the PAC contain facts supporting the conclusion that ACE reported the collections to the CRA Defendants, it will nonetheless permit Evan to file the

---

[9] Although *Ewing*, which involved an alleged violation of the Fair Debt Collection Practices Act (the "FDCPA")— which regulates debt collection practices—distinguished *TransUnion* on the grounds that *TransUnion* involved the FCRA—which regulates credit reporting and is the statute at issue in this case—the Court concludes that *Ewing* is applicable to Evans's claim against ACE because § 1681s-2(b) regulates the conduct of furnishers of information to credit reporting agencies. *See* § 1681s-2(b) ("Duties of furnishers of information upon notice of dispute"). Although the *Ewing* court observed that the plaintiffs had also satisfied the traditional requirement that to prove the publication element of defamation, "the third party must understand the defamatory nature of the communication[,]" it concluded that plaintiffs' appeals did "not implicate" the issue because they "demonstrated third-party dissemination[.]" *Ewing*, 24 F.4th at 1154 ("To require more of the [plaintiffs] would permit the dicta in footnote six [of *TransUnion*] to erode *TransUnion*'s holding that evidence of dissemination to a third party is sufficient to show publication."); *see also RentGrow*, 341 F.R.D. at 188–90 (rejecting argument that such understanding is required where dissemination to a third party has occurred). The Court similarly concludes that the present case does not raise this issue.

PAC considering its directive to do so "freely" and when "justice so requires." Fed. R. Civ. P. Rule 15(a)(2).

### B. Motion to Dismiss

Because Court has granted Evans leave to file an Amended Complaint, the Complaint is no longer operative. Accordingly, ACE's Motion to Dismiss the Complaint (ECF No. 14) is moot. The Court will nonetheless dismiss Experian from this case, without prejudice,[10] because the Amended Complaint fails to establish Evans's standing with respect to the claims brought against it.

### IV. Conclusion

For the foregoing reasons, an order will issue granting Evans's Motion for Leave to Amend (ECF No. 23), denying ACE's Motion to Dismiss (ECF No. 14) as moot, dismissing Experian *sua sponte* and without prejudice, and striking Trans Union from the Amended Complaint.

DATED this 29 day of August, 2022.

BY THE COURT:

James K. Bredar
Chief Judge

---

[10] A "'dismissal for lack of standing—or any other defect in subject matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits.'" *Ali v. Hogan*, 26 F.4th 587, 600 (4th Cir. 2022) (citing *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.2d 175, 185 (4th Cir. 2013)).